[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTION STATEMENT OF THE CASE
The plaintiff is the purchaser of a group of insurance agencies, the individual defendants were key employees of the purchased entities. The defendant "Kearney Insurance Agency, L.L.C." is the new insurance agency formed by the other two defendants after declining employment with the plaintiff.
The plaintiff claims the defendants are breaching the terms of a restrictive covenant executed by the individual defendants and the seller.
The dispute is not about enforcesbility, reasonableness, geographical area or time limits. The sole question is whether the defendants actions violate this clause of the "Confidentiality, Nondisclosure and Non Tampering Agreement;"
 Employee further agrees that during his employment with Employer, and for a two year period after his employment with Employer, he shall not compete with Employer by actively selling to or soliciting Employer's customers . . .
 DISCUSSION I
The plaintiff does not claim, nor did the court hear evidence to suggest, that the defendants have actually approached the plaintiff's customers. The activity complained of consists of these acts:
1. The use of the name "Kearney" in the creation of the new agency;
2. Using the name "Kearney" in advertising;
3. Speaking to customers of the plaintiff who call them or come to CT Page 14339 the agency;
 4 The use of an office "protocol" outlining the defendants' restricted activity under the clause noted above.
In fact, the plaintiff's position is that the defendants cannot sell to any of its customers unless the sale results from a call into the defendant agency which is taken by an employeewho is not aware of the stated prohibition!
It would appear to the court that the defendants would have an obligation to advise their employees of the restriction, lest they violate it under the plaintiff's interpretation or their own. A customer of the plaintiff who shows up at the agency is to be shown the door, according to the plaintiff.
The defendants argue that the word "actively" is the key and that its presence permits sales to the plaintiff's customers who seek them out by phone or in person. Their interpretation of the clause is that "actively" modifies "selling" and "soliciting, so that the defendants can fulfill their obligation by not calling, visiting, or writing to any of the plaintiff's customers.
The use of the protocol is defended on the grounds that it insures that notice of the restriction is announced. Having the customer sign an acknowledgment of the announcement of the restriction is seen as a defense to the kind of claims the plaintiff is now making.
It should be noted that the plaintiff prepared the entire agreement in question and inserted the word "actively" at the suggestion or request of the defendant Timothy Kearney. Thus, any ambiguity in meaning must be construed against the plaintiff. The original form of the agreement had been used by the plaintiff in the past.
The defendants point out that they have done no wholesale mailings, rejected a mass mailing proposal offered by one of their policy providers, and make no phone solicitations of the plaintiff's customers.
They also note that the Kearney agency was opened and operates in the town of Madison, a town with few of the plaintiff's customers. The defendants did not seize the opportunity to rent the premises in New Haven occupied by the selling agency and vacated by the plaintiff. CT Page 14340
The loss of business alleged by the plaintiff is found in about 40 accounts. About 4,000 accounts changed hands originally.
 II
Ballentines Law Dictionary, 3rd edition, defines "solicit" as "To invite a business transaction, for example, the issuing of a policy of insurance . . ."
Applying this definition and employing the plaintiff's interpretation of the restrictive clause, "solicit" stands alone. Thus, the plaintiff argues, when Mr. Kearney went into business and advertised in area newspapers, he was "soliciting" the plaintiff's customers.
Under the defendant's interpretation, there was no "active solicitation" in these acts. That is, no "invitation" to the plaintiff's customers to convert to the Kearney agency. The customers initiated discussion.
On the theory that the parties intended the word "actively" to have some meaning, the court concludes that the only logical inference to draw and the more reasonable interpretation is that the defendants are prohibited from approaching the plaintiff's customers in person, in writing or by phone. It does not prohibit them from speaking to those who initiate contacts with them.
Even assuming "actively" only modifies "selling," the defendants have not initiated contacts and are not guilty of "active selling." Then, turning to "solicit," standing along, the defendants have committed no acts "to invite a business transaction."
It is true that Mr. Kearney opened his own business, used his name and advertised in the New Haven area. The plaintiff would prohibit his use of his name and if he used his name, prohibit advertising.
This appears to be an attempt on the part of the plaintiff to enforce a different agreement than the one in existence. Counsel for the plaintiff conceded at argument that the plaintiff knew the Kearneys would remain in the insurance business in some capacity. The concerns now stated should have been addressed before the sale was finalized. CT Page 14341
The court concludes that going into the insurance business, using the name Kearney, and advertising (with no reference to their prior business affiliation) is not prohibited by the clause in question.
 III
The plaintiff has also urged the court to consider the defendants to be in breach of the clause of the agreement when they failed to usher customers of the plaintiff out the door. As noted above, lacking the word "actively," the clause could be so interpreted. Its presence suggests a difference between "selling" and "actively selling."
The court concludes that "actively selling" suggests some aggressive step or opening salvo from the defendants. Sitting in the office or answering the phone is not considered the active pursuit of business.
 IV
Finally, the plaintiff presents the novel proposition that the defendants are guilty of "soliciting" by speaking to the plaintiff's customers who approach them and engaging in the protocol discussion. In the course of this, the restrictive clause is discussed.
This argument must be rejected as illogical and inconsistent. Illogical because the contacts were initiated by the customers, inconsistent because the clause in question does not prohibit totally all sales to the plaintiff's customers. Again, the word "actively" must have some meaning.
 V
The plaintiff also argues that equitable considerations are heavily in his favor and the court should consider the fact that the person who sold the agencies to the plaintiff had already in place an agreement with the defendant Timothy Kearney (Exhibit K) which was more restrictive than the one in question. Fraud is even inferred.
The court did not hear from the seller, but the plaintiff loses sight of the fact that the agreement was an asset of the CT Page 14342 seller and he was free to modify it or renegotiate it with Mr. Kearney. Also, this agreement only involved one of the agencies the plaintiff eventually purchased.
The parties to the sale were both sophisticated business men and the court assumes that the seller chose to modify the "inventory" and add or subtract from the deal. The plaintiff had a remedy — he didn't have to agree to the sale in the absence of the items he wanted.
 Conclusion
It is the conclusion of the court that the plaintiff has not established that the defendants have breached the agreement in question. Absent a breach, he is not entitled to the extraordinary relief of a temporary injunction.
Anthony V. DeMayo Judge Trial Referee